12544

WARR v. ATLANTIC COAST LINE R. C.

(145 S. E., 712)

*Mr. F. L. Willcox,* for appellant,

*Mr. Philip H. Arrowsmith,* for respondent,

December 7, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This action was instituted by the plaintiff on August 27, 1924. The complaint alleged that on August 31, 1920, the defendant, through "its agents, servants and employees, without any legal right or lawful authority, entered into and

upon the premises, property and home of the plaintiff and there wilfully, wantonly and maliciously, in a highhanded and oppressive disregard of the rights of the plaintiff, made search of his premises and seized and took away therefrom certain articles of property belonging to the plaintiff, to which the defendant had absolutely no right, and notwithstanding the repeated requests and demands of the plaintiff to return the said personal property, it has in a highhanded, wilful and malicious disregard of the rights of the plaintiff refused to return and restore his property to him, all with intent to embarrass and humiliate and annoy the plaintiff, to his damage, actual and punitive, in the sum of Three Thousand and 00/100 ($3,000.00) Dollars."

On motion of the defendant, the plaintiff was required to make his complaint more definite and certain by stating that the premises searched and from which the property was taken were at No. 104 North Jarrott street in the city of Florence; and to specify the articles alleged to have been removed by the employees of the defendant.

The defendant entered a general denial. It endeavored on the trial to show that the entry of the premises and the search thereof, and the taking of the property alleged by plaintiff to have been seized, were all done pursuant to a valid search warrant directed to police officers of the city of Florence, which required a search of the home of Clyde Warr, a son of the plaintiff, for certain stolen goods.

The trial was in the Court of Common Pleas for Florence County before Hon. S. W. G., Shipp, circuit Judge, and a jury, on May 17, 1927. The verdict was in favor of the plaintiff for $135, as actual damages, and $500, as punitive damages.

The defendant has appealed from the judgment entered on six exceptions.

The appellant has argued all the exceptions together, and we think they may be so disposed of. The first five of these relate to the refusal to direct a verdict in favor of the de-

fendant, and especially so as to the issue of willfulness. A brief statement of these exceptions shows the positions of the appellant to be as follows: That a search warrant was obtained by duly appointed police officers of the City of Florence, who were in no sense employees of the defendant, upon information furnished and affidavit made; that the search under that warrant was made under the direction and authority of those police officers, and that there was no testimony that employees of the defendant took any part in the search, except under the direction of the police officers; if there was any irregularity in the search warrant, or the issuing thereof, the same did not appear upon the face of the paper, and there was no testimony that defendant's employees had knowledge of any irregularity in the warrant, or lack of authority in the officers who issued and served it; that the Court should have held that the search warrant was regular on its face, and the jury should not have been allowed to infer from the testimony submitted that it was irregular, or that the employees of the defendant, who participated in the search, had any knowledge of such irregularity; and defendant was in no way liable for punitive damages, because its servants at the time were acting in a perfectly proper way in an endeavor to enforce the laws of the state.

The sixth exception imputes error to the trial judge in charging the jury as to the effect of a search warrant, signed in blank, by a magistrate or recorder, and later filled in by a constable or a chief of police, thereby leaving the jury to infer that there was testimony to this effect, although, as a matter of fact, there was no such testimony. As we understand it, this last exception does not question the correctness of the law on the subject referred to, as given by the circuit Judge, but rather it contends that the charge as given was not responsive to the evidence in the case.

Since it seems to be conceded by both parties, with the slight exception hereinbefore adverted to, that the trial Judge correctly instructed the jury as to

the law, it seems only necessary for us to review the facts adduced from the evidence of the witnesses for both plaintiff and defendant, with the purpose of ascertaining if, under the law, the case should have been submitted to the jury on both the issues of actual and punitive damages.

The wife of the plaintiff testified that in August, 1920, her husband and herself resided in the upstairs of a house, No. 104 Jarrott street in Florence, and that her son, Clyde and his family resided in the downstairs of that house, the plaintiff paying Clyde rent; and Clyde paying the total rent to the owner of the house; that in the month and year mentioned, about 9 a. m. on one Sunday morning, while her husband was absent from home, Messrs. Dorsey, Hewitt, and Sims (employees as police officers of the defendant) and Messrs. Johnson and Bateman (city policemen) were in the Jarrott street house, and inquired if the witness occupied these rooms, and she responded in the affirmative; that the men said they were going to search the rooms, but showed no search warrant, and did not ask her permission. The men named went into a small room where she kept her trunks, and took everything out of the trunks, and carried off with them many articles of clothing, blankets, a revolver, and other articles, all of which belonged either to her husband, her son Joe, or herself, of the value of $200; and no one of the articles taken was in the possession of her son Clyde Warr.

The plaintiff testified as to ownership of some of the articles taken from the rooms occupied by him, the value thereof, and demand by him, at some time not stated, on Mr. Hare, superintendent of the defendant company, for the return of the articles. He said that Mr. Hare told him that he did not know anything about the matter, and referred him to Mr. Dorsey, the captain of the railroad police; but the plaintiff declined to see Mr. Dorsey. Plaintiff's goods were never returned. He also testified that upon the

trial of his son, Clyde, in the United States District Court at Charleston on some larceny charge, in connection with goods alleged to have been stolen from the railroad company, Clyde was acquitted.

S. M. Wetmore, Esq., testified that he was a magistrate in the City of Florence in 1920, and heard a case of the *State v. Clyde Warr* for larceny; that a search warrant against the premises of Clyde Warr was before him at the hearing; that he did not then know where the paper was, but, according to his best recollection, while the paper appeared on its face to be a valid search warrant, he ascertained from testimony before him that it had not been issued in accordance with the law regarding the issue of search warrants.

The defendant produced evidence to show that the search warrant, under which it claimed the search and seizure were made, was lost. It was established also that Mr. E. W. Johnson, the city policeman who had the warrant in his immediate possession at the time of the search, and Chief of Police Brunson, who gave the warrant to Johnson, had both died prior to the trial. All the witnesses for the defendant, and City Policeman Bateman, who testified for the plaintiff, gave testimony that they thought the paper, under which the search was made, was a valid search warrant, and those who saw the paper stated that on its face there was no indication of any irregularity.

J. D. Gilland, Esq., who was city recorder of Florence at the time of the search complained of, did not testify.

City Policeman Bateman testified that on the last Sunday in August, 1920, when he reported at police headquarters for duty, he found there Chief Brunson and Messrs. Hewitt and Sims, railroad police officers, who were talking to Chief Brunson, and that Captain Dorsey came before he left; he did not see Recorder Gilland, and if he had been there that he would have seen him; Chief Brunson told the witness and Policeman Johnson "not to go on our beats

right away, he was preparing papers"; the Chief was writing, but stopped his writing to talk to Johnson and witness; the Chief handed Johnson and witness each a search warrant. He could not say Mr. Brunson wrote out the search warrant, but the only person who was doing any writing was Mr. Brunson, and when the Chief got through writing, he handed the two officers the papers.

Mr. Hewitt, a policeman of the railroad company, swore that, upon the direction of Captain Dorsey, he went to the police headquarters of the city, and was around there from 15 to 30 minutes; upon information he gave to Chief Brunson, the Chief issued a search warrant and gave it to Mr. Johnson; that he did not at any time see Recorder Gilland.

Captain Dorsey testified that there had been many robberies of goods from the railroad company, and that from what he had seen himself, and information he had obtained, one Goffard, a switchman of the railroad company, was guilty of some of the thefts; Goffard was arrested and confessed. From information received from Goffard, and other information, it was deemed wise to search the home of Clyde Warr, son of the plaintiff. Warr, at that time, was employed as railroad switch conductor or switch foreman. Witness went with his assistants, Hewitt and Sims, to police headquarters and requested a search warrant from Chief Brunson. At the time the warrant was being prepared, however, Mr. Dorsey was at the jail talking to Goffard. He did not testify whether or not the city recorder was present at any time. On cross examination he stated that he did not himself seize any of the goods in the Clyde Warr house, but that he was present "in a supervising capacity," and "to see that it was well done." He further stated that he carried away "all of the stuff" that he had on a list, which he exhibited to the Court, and which list was introduced in evidence.

The testimony of the officers who took part in the search

was to the effect that Policeman Johnson read the warrant to Clyde Warr, and that Clyde stated nothing described in the warrant was in his home, but that he made no objection to the search; and no statement was made to Warr as to the circumstances under which the warrant had been issued.

The charge of Judge Shipp and his remarks in refusing the motion for a directed verdict should be reported.

The evidence of the case, which we have reviewed favorable to the plaintiff, as it is our duty to do in considering the exceptions made, shows without doubt that the presiding Judge was correct in letting the jury pass upon the issues in the cause. The burden of showing that the search was made in compliance with the law rested upon the defendant, if the defendant instigated that search, or took part therein through its duly authorized employees. It was conceded that Captain Dorsey and Messrs. Hewitt and Sims were employees of the defendant. All of these gentlemen admitted that they instigated the issuance of the search warrant. There was sufficient testimony to go to the jury on the question as to whether or not the recorder signed the warrant, or if the chief of police signed it, or filled it in blank after the recorder had signed it in advance.

In the case of the *State v. Dupre,* 134 S. C., 268, 131 S. E., 419, the present Chief Justice, speaking for this Court, used this language: "There should be a strict compliance with the law before a Magistrate should issue a warrant to search a person's house. Rich, poor, and humble are equal in law. The poorest and humblest are entitled under law to equal protection."

The judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.